# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. THOMAS P. MONTGOMERY, | ) | |
| 2. MARK WARREN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-743-GKF-PJC |
| | ) | |
| 1. STATE OF OKLAHOMA, ex rel. | ) | |
| Oklahoma Department of Public Safety, | ) | |
| 2. BOB RICKS, Individually and as former Commissioner of the Department of Public Safety, | ) | |
| 3. KEVIN WARD, Individually and as former Commissioner of the Department of Public Safety, | ) | |
| 4. GENE LOCKWOOD, Individually and as former Chief of the Oklahoma Highway Patrol, | ) | |
| 5. GARY ADAMS, Individually and as former Chief of the Oklahoma Highway Patrol, | ) | |
| 6. VAN GUILLOTE, Individually and as former Chief of the Oklahoma Highway Patrol, | ) | |
| 7. MIKE GRIMES, Individually and as Chair and Member of the Staff Disciplinary Review Board (known as the Grimes Board) of the Oklahoma Highway Patrol, | ) | |
| 8. JERRY CASON, Individually and as Chair and Member of the Staff Disciplinary Review Board (known as the Grimes Board) of the Oklahoma Highway Patrol, | ) | |
| 9. MIKE WILLIAMS, Individually and as Chair and Member of the Staff Disciplinary Review Board (known as the Grimes Board) of the Oklahoma Highway Patrol, | ) | |
| 10. PAT COLLINS, Individually and as Chair and Member of the Staff Disciplinary Review Board (known as the Grimes Board) of the Oklahoma Highway Patrol, | ) | |
| 11. JOHN HAYNIE, Individually and as Chair and Member of the Staff Disciplinary Review Board (known as the Grimes Board of the Oklahoma Highway Patrol, | ) | |

| | | |
|---|---|---|
| 12. | All other JOHN DOE DEFENDANTS 1-20, Individually and as employees of the Department of Public Safety who are within the knowledge and control of the State of Oklahoma and unknown at the present time. | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | Defendants. | ) |

## OPINION & ORDER

This matter comes before the court upon the Motion to Dismiss (Dkt. #23) of defendants Bob Ricks, Kevin Ward, Gene Lockwood, Gary Adams, Van Guillote, Mike Grimes, Jerry Cason, Mike Williams, Pat Collins, and John Haynie (collectively, "Individual Defendants"). The Individual Defendants seek dismissal on the grounds of failure to file suit within the applicable two-year statute of limitations, qualified immunity, and failure to state a claim upon which relief can be granted.

### I. The First Amended Complaint[1]

The facts underlying this federal civil rights case date back nearly twenty years. On June 18, 1993, plaintiff Oklahoma Highway Patrol ("OHP") Troopers Thomas P. Montgomery ("Montgomery") and Mark Warren ("Warren"), together with six other OHP troopers and a number of civilians attended a bachelor party for a fellow trooper. The troopers were not on duty, were not in uniform, and were not driving vehicles identifying themselves as troopers. The party began at a Tulsa strip club called Scarlet's, moved to a second strip club known as Lady Godiva's, and ended in a suite at a Residence Inn. At the Inn, two women were present who

---

[1] The First Amended Complaint incorporates by reference three relevant documents attached to the original Complaint – an Order of the Oklahoma Merit Protection Commission dated July 20, 1998 (Dkt. #2, pp. 39-55); a decision of the Tulsa County District Court dated February 21, 2006 (Dkt. #2, pp. 35-38); and an opinion of the Oklahoma Court of Civil Appeals dated December 3, 2008 (Dkt. #2, pp. 9-34). A Court may consider such materials on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) without converting the motion to one for summary judgment. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

openly invited and encouraged individual party participants to accompany them upstairs to receive oral sex. Four of the troopers, by their own admissions, participated in that activity. As a "finale," the women engaged in sexual acts with each other in the presence of the invitees.

In 1995, defendant Commissioner of Public Safety Bob Ricks ("Ricks") assigned OHP Lieutenants Kevin Ward ("Ward") and Scott Watkins ("Watkins") to investigate the bachelor party. Ward and Watkins interviewed the attendees, including the plaintiffs. Defendant Ward prepared affidavits indicating that, based on the interviews, he believed that the four troopers who engaged in sexual acts had violated OHP policies and procedures concerning Conduct Unbecoming an Officer and Immoral Conduct. Defendant Ward did not prepare any affidavits citing disciplinary misconduct against either Montgomery or Warren or the two other troopers.

On May 7, 1996, defendant OHP Chief Gene Lockwood ("Lockwood") appointed a five member Staff Disciplinary Review Board to further investigate the allegations against the four troopers and make recommendations concerning the need for disciplinary action against them. Defendant Captain Mike Grimes ("Grimes") was board chairman, and defendant Jerry Cason ("Cason"), defendant Mike Williams ("Williams"), defendant Pat Collins ("Collins"), and defendant John Haynie ("Haynie") were board members. The proceeding was not taped and the statements taken were not under oath. Montgomery and Warren received notices to appear before the Board as witnesses; they were not notified to appear as parties being investigated.

On July 25, 1996, defendant Grimes issued the "Grimes Report." The report recommended suspension without pay for twenty days for the four troopers who admitted to engaging in sexual acts. The Report recommended that Montgomery and Warren be terminated. The Grimes Report found Montgomery violated OHP Policy Order 78-52, specifically:  2.01 Conduct Unbecoming an Officer; 2.36 Use of Alcohol While Off Duty and Not On Call or

Standby; 2.45 Insubordination; and 2.61 Truthfulness.  Warren was found to have violated the same OHP Policy Order, specifically:  2.01 Conduct Unbecoming An Officer; 2.02 Immoral Conduct; 2.45 Insubordination; and 2.61 Truthfulness.  No disciplinary action was recommended for the two other troopers who were present at the bachelor party and appeared as witnesses before the Board.  Plaintiffs allege the Individual Defendants knew it was a violation of department policy and due process protections to recommend discipline for troopers who had appeared before the Disciplinary Review Board only as witnesses.

Next, Chief Lockwood called Montgomery and Warren for a Pretermination Hearing.  After the hearing, Lockwood recommended to Commissioner Ricks that, rather than terminate the plaintiffs, Warren be demoted from Second Lieutenant to Trooper, and Montgomery be suspended for twenty days.  The recommended discipline was imposed on November 1, 1996.

The plaintiffs administratively appealed their punishments to the Merit Protection Commission ("MPC").  An administrative law judge granted summary judgment in favor of the Department of Public Safety ("DPS") on May 8, 1997, but the MPC vacated that order and remanded the case to a new ALJ for a full hearing on the merits.  On July 20, 1998, the new ALJ determined that DPS had failed to meet its burden of proof, and ordered that:  1) Warren's demotion be rescinded, that he be reinstated to the rank of second Lieutenant with backpay restored and his personnel records expunged of a references to his demotion; and 2) that Montgomery's suspension without pay be rescinded, with backpay restored.  DPS filed a motion for reconsideration before the MPC.  Following a hearing on August 27, 1998, the MPC voted to overturn the ALJ's order and reinstate the discipline imposed on Warren and Montgomery.

On September 29, 1998, Warren and Montgomery filed a Petition for judicial review in the District Court of Tulsa County, Oklahoma.  By Order dated April 9, 2001, the state court

reversed and remanded the matter back to the Merit Protection Commission with instructions to make findings of fact and conclusions of law to support its decision and to specifically reference the record in the findings.  The MPC filed a motion to vacate the remand order, which the state court denied.  MPC and DPS subsequently petitioned the Oklahoma Supreme Court to issue a writ of prohibition blocking enforcement of the remand order.  The Supreme Court denied the petition on November 25, 2002.  Upon remand, the MPC issued an *en banc* order on October 13, 2003.  Montgomery and Warren then filed an Amended Petition for Judicial Review with the state court, asserting that the *en banc* order was flawed.  Ultimately, the state court agreed, entering a decision on February 21, 2006, in which it held that the *en banc* order was not in compliance with its remand order, and concluding that the *en banc* order was both clearly erroneous and arbitrary and capricious.  The state court ordered the MPC and DPS to reinstate the ALJ's order of July 20, 1998, to reinstate plaintiff Warren to the rank of Second Lieutenant, and to award both Warren and Montgomery back pay with interest.

DPS appealed the state court's order.  On December 3, 2008, the Oklahoma Court of Civil Appeals affirmed the lower court's order, finding substantial evidence to support the lower court's decision.  On May 20, 2009, the Oklahoma Supreme Court denied certiorari and issued its mandate.  Plaintiffs filed this suit on November 23, 2010.

Between November 1, 1996, when defendant Ricks imposed discipline on the plaintiffs, and denial of certiorari in November, 2009, several persons served as Chief of the OHP. Sometime after the plaintiffs were disciplined, defendant Gary Adams ("Adams") became Chief and allegedly "continued to allow the violations of the due process and civil rights of Montgomery and Warren to continue." (Dkt. #19, p.7, ¶ 36).  Defendant Cason succeeded Adams as Chief and allegedly "allowed the violations and damages to the plaintiffs to continue."

*Id.* at ¶ 39.  Defendant Van Guillote ("Guillote") became the next Chief and "continue[d] to allow the damages and harm caused by the OHP violations of Montgomery and Warren's due process and civil rights to continue." *Id.* at ¶ 42.  At some point Defendant Ward became Commissioner of DPS and allegedly "allowed the due process and continuing civil right violations . . . to continue . . . in full disregard as to his ability to halt such ongoing damages and harm . . ." *Id.* at p.8, ¶47.  Plaintiffs do not allege the time frame in which Adams, Cason, Guillote, or Ward acted or failed to act in a way that violated their rights.

## II.  Statute of Limitations

Plaintiffs do not contest that Oklahoma's two year statute of limitations applies to their § 1983 claims. *See* Okla. Stat. tit. 12 § 95(A)(3).

"Though the two year limitations period governing both of [plaintiffs'] claims is a creature of state law, federal law governs the question of accrual of federal causes of action, and thus, dictates when the statute of limitations begins to run for purposes of § 1983." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998).  "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. . . . Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated.  This requires the court to identify the constitutional violation and locate it in time."  *Id.* (citations and internal quotations omitted).

Plaintiffs contend they were "compelled to exhaust their administrative remedies" and that exhaustion is "a necessary predicate" to their claims.  (Dkt. #26, p.9).  However, the Supreme Court has held that "exhaustion of state administrative remedies should not be required

as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Board of Regents of State of Fla*., 457 U.S. 496, 516 (1982). Plaintiffs point to no applicable authority to the contrary. They cite case law for the proposition that a state-law malicious prosecution cause of action does not accrue until the prosecution terminates in plaintiff's favor, but the claims before this federal court are federal causes of action for which federal law governs the issue of accrual.

Plaintiffs also argue that state administrative proceedings should not "preclude a later Section 1983 action in Federal Court." (Dkt. #26, p.12). The argument is misplaced – the issue presented in the briefing is not whether the administrative proceedings preclude this suit, but whether plaintiffs' Section 1983 claims against the Individual Defendants are barred by the two-year statute of limitations.

The plaintiffs further contend their claims are timely under the "continuing violation doctrine." They concede the Tenth Circuit has not directly addressed whether the continuing violation doctrine applies to Section 1983 claims. However, they note that, in *Parkhurst v. Lampert*, 264 Fed. App'x 748, 749 (10th Cir. 2008), the Circuit stated that "[a]ssuming the continuing violation doctrine applies to § 1983 claims, the doctrine is triggered 'by continual unlawful acts, not by continual ill effects from the original violation.'" Plaintiffs argue they have sufficiently alleged continuing unlawful acts which occurred within the two-year limitations period.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Assuming the continuing violation doctrine applies to Section 1983 claims, the court therefore examines the alleged personal involvement of each Individual Defendant and any alleged "continuing unlawful acts" to determine whether the doctrine may apply as to each individual.

Defendants Grimes, Cason, Williams, Collins, and Haynie were members of the staff Displainary Review Board, and are alleged to have participated in recommending the termination of plaintiffs, who appeared before the board only as witnesses. The Grimes Report, which allegedly recommended termination, was issued on July 25, 1996. The First Amended Complaint contains no allegations that Grimes, Williams, Collins, and Haynie committed any later acts. Therefore, the last alleged unlawful act by Grimes, Williams, Collins and Haynie occurred over fourteen years before plaintiffs filed this federal civil rights action. The claims against defendants Grimes, Williams, Collins, and Haynie are dismissed.

Defendant Cason, who was a member of the Disciplinary Review Board, later served as Chief of the OHP during an unspecified period. Plaintiffs allege that Cason "allowed the violations and damages to the plaintiffs to continue, knowing full well he could have stopped such damages and harm in his official capacity as Chief." (¶39, First Amended Complaint). The allegation raises a number of subsidiary issues, among which is whether the alleged failure to halt ongoing litigation or administrative proceedings may as a matter of law give rise to a federal civil rights action. For purposes of the instant motion, Plaintiffs have pleaded no facts to show that Cason committed any unlawful act, either of omission or commission, within the two-year period of limitations. Therefore, the claims against Cason are dismissed.

Defendants Ricks and Lockwood are not alleged to have taken any actions after 1996. The claims against Ricks and Lockwood are dismissed as outside the period of limitations.

Defendant Ward investigated the bachelor party in 1995, and later served as Chief of the OHP during an unspecified period. Defendants Adams and Guillote also served as Chiefs of the OHP during unspecified periods. Plaintiffs have failed to plead facts indicating that Ward,

Adams, or Guillote committed any unlawful act within the two-year period of limitations. The claims against Ward, Adams, and Guillote are dismissed.

Assuming the continuing violation doctrine applies to § 1983 claims, plaintiffs have failed to allege any "continual unlawful acts" by any Individual Defendant which would trigger the doctrine. *See Parkhurst*, 264 Fed. App'x at 749. The Court therefore grants the Individual Defendants' motion to dismiss on limitations grounds.

Plaintiffs also contend in their response that the State has not yet removed all reference to their discipline, as ordered by the state courts. Issues of enforcement of the state court's order should be brought before the state courts. Moreover, the argument appears to be properly directed to the State, through its Department of Public Safety and its present leadership, and not in connection with the instant motion to dismiss filed by the Individual Defendants.

Plaintiffs' alternative request for leave to amend is granted. In their Second Amended Complaint, the plaintiffs shall "identify the constitutional violation and locate it in time" as against any individual defendant in order to demonstrate that the claim accrued within the limitations period. *Smith v. City of Enid*, 149 F.3d at 1154. Because the plaintiffs have been instructed to identify the specific constitutional violations alleged to have occurred, and locate in time each defendant's action which allegedly caused each violation, the Court will be better able to address whether the plaintiffs have pleaded facts sufficient to state a claim and/or whether any or all individual defendants are entitled to qualified immunity.

WHEREFORE, the Motion to Dismiss of individual defendants Ricks, Ward, Lockwood, Adams, Guillote, Grimes, Cason, Williams, Collins, and Haynie (Dkt. #23) is granted, without prejudice to the filing of a Second Amended Complaint within twenty days of this order.

DATED this 9th day of March, 2012.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma